UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **OAKWOOD PRODUCTS INC.,** b/d/a **OAKWOOD CHEMICALS**<br><br>**Plaintiff,**<br><br>v.<br><br>**UNITED STATES OF AMERICA; and UNITED STATES CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT,** *in his capacity as Commissioner of United States Customs and Border Protection*<br><br>**Defendants** | **Court No.  26-00542** |

**COMPLAINT**

Plaintiff, Oakwood Products Inc., d/b/a Oakwood Chemicals ("Oakwood" or "Plaintiff"), by and through its undersigned counsel, alleges the following:

1. Oakwood is an importer of record that is an importer of merchandise subject to the challenged tariffs, *i.e.*, duties, in this complaint.  Similar to challenges raised by other similarly-situated plaintiffs, Oakwood brings this action to (a) challenge the legality of the tariffs imposed since February 2025 pursuant to the International Emergency Economic Powers Act ("IEEPA"), and (b) ensure that any duties Plaintiff has paid pursuant to such tariff actions are properly refunded to Plaintiff.

2. Since February 2025, the President of the United States has signed a series of Executive Orders invoking IEEPA as the basis for imposing broad new tariffs ("IEEPA duties") on goods entering the United States from nearly every country, including those countries from which Oakwood sources its imports.  As an importer of record, Oakwood is responsible for

paying IEEPA duties on goods it imports into the United States, and, in fact, has paid IEEPA duties.

3.      IEEPA does not authorize the imposition of those tariffs. This Court and the United States Court of Appeals for the Federal Circuit ("Federal Circuit") have already held that IEEPA does not authorize the President to impose these tariffs. *See V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025), *cert. granted*, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025). The U.S. District Court for the District of Columbia has also found that the same tariffs were not authorized by the IEEPA statute. *See Learning Res., Inc. v. Trump,* 784 F. Supp. 3d 209 (D.D.C. 2025), *cert. granted before judgment*, No. 24-1287, 2025 WL 2601021 (U.S. Sept. 9, 2025).

4.      Consistent with the decision of this Court and the Federal Circuit in *V.O.S. Selections,* Oakwood seeks an order that the IEEPA duties imposed under these Executive Orders are unlawful.

5.      *V.O.S. Selections* and *Learning Resources* are under consideration by the Supreme Court. Briefing is complete and the Supreme Court held oral argument on November 5, 2025. Due to the expedited nature of its review, the Supreme Court may issue its decision soon.

6.      Oakwood brings this separate action to ensure its right to refunds of any and all unlawfully collected duties under IEEPA. If the Supreme Court holds that the IEEPA duties and the underlying Executive Orders are illegal, importers may not be assured they will receive refunds of the unlawfully collected tariffs without their own court judgment providing judicial relief. *See AGS Company Automotive Solutions v. U.S. Customs and Border Protection*, Consol Court No. 25-255, Slip Op. 25-154 (Ct. Int'l Trade Dec. 15, 2025).

7. Judicial action is necessary now because Oakwood's import entries that were assessed IEEPA duties pursuant to the challenged Executive Orders have begun to liquidate as of December 2025.

8. Accordingly, with respect to its import entries, Oakwood seeks (i) a declaration that IEEPA duties are unlawful; (ii) an injunction barring Defendants from continuing to assess or collect duties imposed under the challenged Executive Orders; and (iii) an order requiring Defendants to refund all IEEPA duties Oakwood already paid on its covered imports, as well as any such duties Oakwood will pay during the pendency of this action. To the extent that Oakwood's entries subject to IEEPA duties liquidate during the pendency of this action, Oakwood also seeks remedial relief in the form of reliquidation such that Oakwood can receive a refund (with interest) of the IEEPA duties paid.

## PARTIES

9. Plaintiff, Oakwood Products Inc., is incorporated and headquartered in South Carolina. Oakwood is the importer of record of chemical products used primarily in the research and development of new products, including pharmaceuticals and electronic products.

10. Defendant, the United States of America, is the federal government of the United States of America. Defendant United States of America received the disputed tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

11. Defendant United States Customs and Border Protection ("CBP") is a component agency of the United States Department of Homeland Security ("DHS"), headquartered in Washington, D.C. CBP is responsible for administering and collecting duties and taxes on goods imported into the United States.

12. Defendant Rodney S. Scott is the Commissioner of CBP and is named as a Defendant in his official capacity.

## JURISDICTION AND STANDING

13. The Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1581(i). *See V.O.S. Selections*, 149 F.4th at 1334; *AGS Company Automotive Solutions v. U.S. Customs and Border Protection*, Consol Court No. 25-255, Slip Op. 25-154 (Ct. Int'l Trade Dec. 15, 2025).

14. In addition, this Court possesses the same equitable authority as a federal district court under 28 U.S.C. § 1585. Where a civil action arises under 28 U.S.C. § 1581, this Court may issue a money judgment against the United States and grant any other appropriate remedy, such as declaratory relief, injunctions, remand orders, and writs of mandamus or prohibition. *See* 28 U.S.C. §§ 2643(a)(1), (c)(1).

15. Oakwood has standing to pursue this action because it is the importer of record for merchandise subject to the challenged IEEPA duties.

16. Oakwood has paid IEEPA duties pursuant to those very Executive Orders that have been found to be unlawful and has therefore suffered direct injury. Those injuries are addressable through declaratory and injunctive relief. Absent judicial relief, Oakwood also faces immediate and irreparable harm because entries for which IEEPA duties were paid have begun to liquidate as of December 2025.

# GENERAL PLEADINGS

## I. The President has Issued Multiple Tariff Orders Invoking IEEPA Authority

### A. The IEEPA Tariff Orders

17. On February 1, 2025, the President issued three Executive Orders imposing new tariffs on imports from Mexico, Canada, and China. Each order invoked IEEPA as the statutory basis for authorizing the tariffs. Each order justified the tariffs as necessary to address a claimed national emergency related to risks arising from alleged trafficking of illegal drugs into the United States and/or risks arising from illegal immigration. Collectively, Plaintiff refers to these orders as the "Trafficking Tariff Orders."

18. Executive Order 14194, 90 Fed. Reg. 9117, *Imposing Duties To Address the Situation at Our Southern Border* ("Mexico Tariff Order"),[1] imposed an additional 25 percent tariff on imports from Mexico. The order justified the use of emergency powers by citing risks allegedly arising from an influx of illegal immigration and illicit drugs into the United States and Mexico's alleged failure to take action to counter those risks. *Id.*

19. Executive Order 14193, 90 Fed. Reg. 9113, *Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border* ("Canada Tariff Order"),[2] similarly declared an emergency tied to opioid trafficking and imposed a 25 percent additional tariff on imports from Canada, with certain exceptions.

20. A third order, Executive Order 14195, 90 Fed. Reg. 9121, *Imposing Duties To Address the Synthetic Opioid Supply Chain in the People's Republic of China* ("China Tariff

---

[1] Exec. Order No. 14194, *Imposing Duties To Address the Situation at Our Southern Border*, 90 Fed. Reg. 9117 (Feb. 7, 2025).

[2] Exec. Order No. 14193, *Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9113 (Feb. 7, 2025) ("energy or energy resources" from Canada were subject to an additional 10 percent tariff).

Order"),³ declared a national emergency related to opioid trafficking, asserting that "the sustained influx of synthetic opioids" constituted a national emergency and claimed that chemical suppliers based in China evaded enforcement efforts by hiding "illicit substances in the flow of legitimate commerce." This order imposed an additional 10 percent *ad valorem* duty on imports of Chinese goods.

21.    On March 3, 2025, the President issued an amendment to the prior China Tariff Order via Executive Order 14228, 90 Fed. Reg. 11,463, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China* ("March 3 Amendment").⁴ This amendment increased the tariff rates imposed by the February 1, 2025 China Tariff Order to 20 percent on the basis that China had "not taken adequate steps to alleviate the illicit drug crisis".⁵

22.    The following month, on April 2, 2025, citing the persistent U.S. trade deficit as a separate national emergency, the President issued Executive Order 14257, 90 Fed. Reg. 15,041, *Regulating Imports with a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficit* ("Reciprocal Tariff Order").⁶ This order imposed a baseline 10 percent tariff on nearly all U.S. imports effective April 5, 2025, and

---

³ Exec. Order No. 14195, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9121 (Feb. 7, 2025).

⁴ Exec. Order No. 14228, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11,463 (Mar. 7, 2025).

⁵ *Id.*

⁶ Exec. Order No. 14257, *Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15,041 (Apr. 7, 2025).

increased the "reciprocal" tariffs on 56 countries and the member states of the European Union effective April 9, 2025.[7] The higher country-specific tariff rates ranged from 11 to 50 percent.

23.     On April 8, 2025, the President signed Executive Order 14259, *Amendment to Reciprocal Tariffs and Updated Duties as Applied to Low-Value Imports from the People's Republic of China*, increasing the reciprocal tariff applicable to China from 34 to 84 percent in response to tariffs imposed by China on U.S. goods as retaliation for the U.S. tariff actions.[8]

24.     On April 9, the President signed Executive Order 14266, *Modifying Reciprocal Tariff Rates To Reflect Trading Partner Retaliation and Alignment*,[9] which suspended the higher country-specific tariffs on all countries, except China, for 90 days.  The same order raised the "reciprocal" tariff rate imposed on China-origin goods from 84 to 125 percent.  As a result, most Chinese-origin goods faced a combined 145 percent IEEPA-based tariff as a result of the 20 percent trafficking tariff and the 125 percent reciprocal tariff.[10]

25.     In implementing these Executive Orders (together, referred to as the "IEEPA Tariff Orders"), the Defendants directed modifications to the Harmonized Tariff Schedule of the United States ("HTSUS") so that merchandise subject to the new duties would instead enter under newly assigned (Chapter 99) tariff codes.

---

[7] *Id*. at Annex I.

[8] Exec. Order No. 14259, *Amendment to Reciprocal Tariffs and Updated Duties as Applied to Low-Value Imports From the People's Republic of China*, 90 Fed. Reg. 15,509 (Apr. 14, 2025).

[9] Exec. Order No. 14266, *Modifying Reciprocal Tariff Rates To Reflect Trading Partner Retaliation and Alignment*, 90 Fed. Reg. 15,625 (Apr. 15, 2025).

[10] Hereinafter, any Executive Order that establishes or modifies reciprocal tariffs that have IEEPA as its base will be referred to as the "Reciprocal Tariff Orders."

B.     **Subsequent Litigation Challenging the IEEPA Tariff Orders**

26.    On April 14, 2025, multiple companies filed an action in this Court challenging the legality of these Executive Orders. *See V.O.S. Selections, et al. v. Donald Trump, et al.*, No. 25-066 (Ct. Int'l Trade 2025). This Court held that the orders were unlawful,[11] and the Federal Circuit affirmed.[12]

27.    Since that time, the President has issued additional Executive Orders imposing or modifying tariffs under IEEPA. In this case, however, Plaintiff challenges only the specific orders that the Federal Circuit has already held to be unlawful.

28.    On November 11, 2025, a U.S. importer of merchandise subject to IEEPA duties filed an action in this Court challenging the legality of these Executive Orders. *AGS Company Automotive Solutions v. U.S. Customs and Border Protection*, No. 25-255 (Ct. Int'l Trade filed Nov. 11, 2025), ECF No. 3. The instant action mirrors the cases consolidated under Court No. 25-255.

29.    On December 15, 2025, this Court denied AGS Company Automotive Solutions' motion for preliminary injunction, finding that plaintiffs are not at risk of experiencing irreparable harm as a result of liquidation because this Court has the authority to order reliquidation in cases involving constitutional challenges to duties under 28 U.S.C. § 1581(i). *AGS Company Automotive Solutions v. U.S. Customs and Border Protection*, Consol Court No. 25-255, Slip Op. 25-154 (Ct. Int'l Trade Dec. 15, 2025). In *AGS* and other cases involving IEEPA duties, "the Government has taken the 'unequivocal position' that 'liquidation will not affect the availability of refunds after a final decision' in *V.O.S.*" *See id.* at 8.

---

[11] *V.O.S. Selections, Inc. v. Trump*, 772 F. Supp. 3d 1350 (Ct. Int'l Trade 2025).
[12] *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025).

### C. Implementation of the Challenged IEEPA Tariffs by Defendant CBP

30. CBP is responsible for administering and collecting duties imposed under U.S. law, including the IEEPA-based tariffs at issue. *See* 19 U.S.C. §§ 1500, 1502.

31. Congress enacted the Omnibus Trade and Competitiveness Act of 1988, which adopted the HTSUS. *See* 19 U.S.C. § 1292; Pub. L. No. 100-418, 102 Stat. 1107 (1988). Under the HTSUS framework, CBP classifies goods entering the United States using an organized structure of chapters, headings, and subheadings, each identifying goods and corresponding duty rates. The HTSUS headings cover broad categories of merchandise, while the subheadings provide more specific classifications.

32. CBP regulations govern how merchandise must be classified and appraised under the HTSUS. *See* 19 C.F.R. § 152.11.

33. The United States International Trade Commission ("USITC") publishes and maintains the HTSUS in accordance with presidential directives. *See* 19 U.S.C. §§ 1202, 3005, 3006.

34. When goods enter the United States, CBP is responsible for assessing and collecting any tariffs on those goods, after confirming the HTSUS classification of the goods, according to the rates established by the HTSUS. 19 U.S.C. §§ 1202, 1500, 1502. To facilitate the collection of tariffs, CBP uses its Cargo Systems Messaging Service ("CSMS") to inform importers of changes to the amount and administration of import duties. The guidance incorporates and imposes the current duties imposed under the IEEPA Tariff Orders.[13]

---

[13] *See, e.g.*, U.S. Customs & Border Prot., CSMS # 64297449, *Guidance: Additional Duties on Imports from Canada* (Mar. 3, 2025), available at https://content.govdelivery.com/accounts/USDHSCBP/bulletins/3d519e9; U.S. Customs & Border Prot., CSMS # 64297292, *Guidance: Additional Duties on Imports from Mexico* (Mar. 3,

35. In implementing the IEEPA Tariff Orders, CBP required that goods subject to the IEEPA duties be classified under newly created tariff codes – codes that exist solely because of the Executive Orders that this Court and the Federal Circuit have declared unlawful.

**D.      Liquidation**

36. CBP's regulations define "Liquidation" as "the final computation or ascertainment of duties on entries for consumption or drawback entries."  19 C.F.R. § 159.1.

37. When goods enter the United States, the importer of record pays estimated duties based on the declared value of the goods, the country of origin, and HTSUS classification.  *See* 19 U.S.C. § 1484.  CBP reviews the entry declaration and examines the merchandise.

38. After review, CBP finalizes the classification, value, duty rate, and total duties owed.  *See* 19 U.S.C. § 1500.  CBP then "liquidates" the entry by notifying the importer of the final calculation.  *See* 19 U.S.C. § 1504.  Upon liquidation, CBP will notify the importer if additional duties are owed or if the importer is entitled to a refund of a portion of the estimated duties paid.

39. Unless extended, liquidation must occur within one year from the date of entry.  *See* 19 U.S.C. § 1504(a).  As a matter of practice, CBP typically liquidates duties within 314 days after entry and posts public notices of liquidation.

40. CBP may extend the liquidation deadline for up to one additional year upon an importer's request and a showing of good cause.  *See* 19 U.S.C. § 1504(b)(2); *see* 19 C.F.R.

---

2025), available at https://content.govdelivery.com/accounts/USDHSCBP/bulletins/3d5194c; U.S. Customs & Border Prot., CSMS # 64299816, *Update – Additional Duties on Imports from China and Hong Kong* (Mar. 3, 2025), available at https://content.govdelivery.com/accounts/USDHSCBP/bulletins/3d52328; U.S. Customs & Border Prot., CSMS # 64680374, *Guidance – Reciprocal Tariffs, April 5 and April 9, 2025, Effective Dates* (Apr. 8, 2025), available at https://content.govdelivery.com/accounts/USDHSCBP/bulletins/3daf1b6.

§ 159.12(a)(1)(ii).  However, upon information and belief, CBP is refusing to extend liquidation for the sole reason of the pendency of the Supreme Court decision.

41. This Court has equitable power to suspend liquidation where necessary. *See, e.g.*, *In re Section 301 Cases*, 524 F. Supp. 3d 1355, 1365-66 (Ct. Int'l Trade 2021).

42. After liquidation occurs, and if the liquidation is protestable, an importer of record has 180 days to file a protest contesting the liquidation, asking CBP to "reliquidate" the entry. 19 U.S.C. § 1514.  An importer may protest "any clerical error, mistake of fact, or other inadvertence . . . in any entry, liquidation, or reliquidation, and, decisions of the Customs Service". *Id.*  However, where CBP acts in a ministerial capacity, *i.e.*, without discretion, such as by applying a duty rate without discretion, the liquidation generally cannot be protested.  *See Rimco Inc. v. United States*, 98 F.4th 1046, 1053 (Fed. Cir. 2024); *see also Thomson Consumer Elecs., Inc. v. United States*, 247 F.3d 1210, 1215 (Fed. Cir. 2001).

43. In a separate, parallel action, *AGS Company Automotive Solutions v. U.S. Customs and Border Protection*, this Court recognized that plaintiffs "'are not required to file a protest' in cases involving constitutional challenges to duties" and concluded that "this court has the authority to order reliquidation in cases involving constitutional challenges to duties under 28 U.S.C. § 1581(i)." Slip. Op. 25-154 at 7-8 (internal citations omitted).

44. Moreover, in *AGS*, the Government has taken the position that it will not oppose the court ordering reliquidation of plaintiff's entries subject to the challenged IEEPA duties if such duties are found to be unlawful. *Id.* 3-4.  The Government has taken the same position in other cases involving IEEPA tariffs, *id.* at n.1, and judicial estoppel would prevent it from taking an inconsistent approach after a final result in *V.O.S. Id*. at 5 (citing *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)).

## II. IEEPA Does Not Authorize the Imposition of Tariffs.

45. The challenged Trafficking Tariff Orders and Reciprocal Tariff Orders cite IEEPA, 50 U.S.C. § 1701 *et seq.*, the National Emergencies Act, 50 U.S.C. § 1601 *et seq.*, the Trade Act of 1974, 19 U.S.C. § 2483, and 3 U.S.C. § 301 as sources of authority. None of these statutes gives the President the power to impose tariffs. Indeed, the Federal Circuit has now expressly held that IEEPA does not authorize the duties imposed through these orders. *See V.O.S. Selections, Inc. v. Trump*, 149 F.4th at 1312.

46. IEEPA grants the President certain emergency powers, but these powers may be used only to deal with an "unusual and extraordinary threat" for which a national emergency has been declared, and only for purposes specified in the statute. *See* 50 U.S.C. § 1701(b). Those powers include the ability to "investigate, regulate, prohibit . . . importation or exportation of . . . any property in which any foreign country or a national thereof has any interest." 50 U.S.C. § 1702(a)(1)(A)-(B). IEEPA's text never uses the words "tariff," "duty," or any equivalent terms. Nor does it authorize the President to impose duties, raise duty rates, create country-specific schedules, or modify the HTSUS.

47. IEEPA was enacted in 1977. Both the House and Senate committee reports expressed the view that past Presidents had abused the authority to regulate economic transactions in a national emergency under a different statute – the Trading With the Enemy Act ("TWEA") – by using it in circumstances far removed from those that originally gave rise to the declaration of a national emergency. *See* Christopher Casey et al., Cong. Rsch. Serv., R45618, The International Emergency Economic Powers Act: Origins, Evolution, and Use, at 7, n.51 (2024); H.R. Rep. No. 95-459, at 7–9 (1977); S. Rep. No. 95-466, at 2 (1977).

48. Although IEEPA has been amended several times, Congress has never amended it to authorize the imposition of tariffs or duties. This is true notwithstanding that Congress has

enacted numerous other tariff statutes where it expressly granted that power to the President under various conditions.

### III. The Power to Impose Tariffs is Vested in Congress, Not the President.

49. The U.S. Constitution places tariff authority squarely with Congress. Article I provides that "{a}ll legislative powers herein granted shall be vested in a Congress of the United States," and further specifies that Congress shall have the power to "lay and collect Taxes, Duties, Imposts, and Excises," and to "regulate Commerce with foreign Nations." U.S. CONST. art. I, §§ 1, 8.

50. As has been long understood, tariffs fall within the Taxing and Commerce clauses with the authority to impose them therefore vested in Congress alone. To the extent that Congress may delegate elements of this authority, it must provide clear and intelligible guidance. *See Fed. Commc'ns Comm'n v. Consumers' Rsch.*, 606 U.S. 656 (2025).

51. IEEPA contains no such intelligible principle permitting the President to impose tariffs. The statute is structured to provide authority to regulate or control property and financial transactions, not to authorize duties that can rise to 145 percent or apply to nearly all imports.

52. Reading IEEPA to authorize tariffs would also raise serious nondelegation concerns and would require striking down the statute as unconstitutional under the nondelegation doctrine for lacking clear and intelligible guidance to the President.

53. The Supreme Court has repeatedly emphasized that Congress must speak clearly before it is proper to find it intended to confer power of vast economic and political significance on the executive branch. *See West Virginia v. EPA*, 597 U.S. 697, 716 (2022) (quoting *Utility Air Regulatory Group v. EPA*, 573 U. S. 302, 324 (2014)); *Biden v. Nebraska*, 600 U.S. 477, 505-06 (2023).

**IV.     Courts Have Held that IEEPA Does Not Authorize the Challenged Tariffs.**

54.    This Court granted summary judgment to plaintiffs in *V.O.S. Selections* and permanently enjoined the government from enforcing the IEEPA duties. The Federal Circuit, sitting *en banc*, affirmed the decision on August 29, 2025, holding that the IEEPA duties are unlawful. *See V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025), *cert. granted*, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025).

55.    In a parallel case filed by different importers, the U.S. District Court for the District of Columbia likewise held that IEEPA does not authorize *any* tariffs. *See Learning Res., Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025), *cert. granted before judgment*, No. 24-1287, 2025 WL 2601021 (U.S. Sept. 9, 2025). That case was on appeal when the Supreme Court granted certiorari in both *V.O.S. Selections* and *Learning Resources*. The cases were consolidated and fully briefed before the Supreme Court. Oral argument at the Supreme Court took place on November 5, 2025.

**V.     Plaintiff Has Paid IEEPA Duties Imposed Pursuant to the Challenged Executive Orders.**

56.    As of the date of this Complaint, Plaintiff has paid IEEPA duties imposed under the challenged Trafficking Tariff Orders and Reciprocal Tariff Orders, including subsequent modifications to these Orders. These are the very same Executive Orders that were found unlawful by this Court and the Federal Circuit.

57.    Plaintiff's imports subject to IEEPA duties entered the United States under newly created HTSUS codes that exist only because of the unlawful tariff regime.

58.    Plaintiff has paid IEEPA duties and continues to pay IEEPA duties.

59.    The past import entries for which Plaintiff paid IEEPA duties are scheduled to begin liquidation on or around December 30, 2025.

14

60. Based on Plaintiff's knowledge and belief, CBP has advised importers that it will not be extending liquidation for entries subject to IEEPA tariffs.

61. Without judicial relief, these entries will liquidate imminently, potentially extinguishing Plaintiff's ability to obtain refunds even if the Supreme Court affirms the Federal Circuit's ruling.

## STATEMENT OF CLAIMS

**COUNT I:** **THE CHALLENGED TARIFF ORDERS ARE *ULTRA VIRES* UNDER *V.O.S. SELECTIONS***

62. Plaintiff incorporates by reference paragraphs 1-61 above.

63. This Court has already held in *V.O.S. Selections* that the President exceeded the authority conferred by IEEPA when he imposed the challenged tariffs. As this Court explained in its *V.O.S. Selections* opinion, IEEPA authorizes the President to "investigate, regulate, or prohibit" certain categories of transactions involving foreign countries during a national emergency, but it does not authorize the imposition of tariffs or duties on imported goods. Nor does it transfer tariff-imposing power from Congress to the President. The Federal Circuit affirmed this Court's holding, finding that Congress has not delegated to the President the authority to impose duties such as those challenged here.

64. The challenged tariffs in this Complaint are the same as those struck down in *V.O.S. Selections*. They rely exclusively on IEEPA as the basis for imposing duties and revising the HTSUS.

65. For the same reasons articulated by the Federal Circuit, the challenged tariffs in this case exceed the President's statutory authority and are therefore unlawful and void as to Plaintiff.

66. Plaintiff respectfully requests this Court in this action declare that the challenged tariffs are unlawful as to Plaintiff, and enjoin CBP from collecting IEEPA duties from Plaintiff. The Court should further order CBP to refund all IEEPA duties collected from Plaintiff since their imposition, plus interest, as provided by law.

67. The Court should also exercise its authority under 28 U.S.C. § 1581(i) to order reliquidation of Plaintiff's entries that have liquidated by the conclusion of this action so that Plaintiff may receive refunds of all IEEPA duties.

**COUNT II: ALTERNATIVELY, THE CHALLENGED TARIFF ORDERS ARE UNCONSTITUTIONAL**

68. Plaintiff incorporates by reference paragraphs 1-67 above.

69. To the extent that this Court were to conclude that IEEPA could be interpreted as authorizing tariffs – a construction Plaintiff disputes – the challenged Trafficking Tariff Orders and Reciprocal Tariff Orders would nevertheless be invalid, because such a reading of IEEPA would constitute an unconstitutional delegation of legislative authority.

70. The Constitution vests in Congress exclusively the power to "lay and collect … Duties." U.S. CONST. art. I, § 8, cl. 1.

71. Under well-established separation-of-powers principles and Supreme Court precedent, Congress may not delegate this authority to the President unless it provides clear and intelligible guidance that limits and guides the exercise of the executive discretion.

72. IEEPA contains no such intelligible principle with respect to tariffs. Nothing in IEEPA provides any standard, limit, or guidance under which the President may impose duties, revise duty rates, or modify tariff schedules. As a result, interpreting IEEPA to authorize the challenged tariffs would amount to an impermissible transfer of legislative power to the executive branch.

73. Plaintiff therefore seeks a declaration that the IEEPA-based tariff orders are unconstitutional as applied to Plaintiff, an injunction prohibiting CBP from enforcing the tariffs as to Plaintiff, and an order directing CBP to reliquidate any entries that have liquidated, and refund all IEEPA duties paid by Plaintiff, plus interest, as provided by law.

## *COUNT III*:   **DECLARATORY RELIEF**

74. Plaintiff incorporates by reference paragraphs 1-73 above.

75. Under 28 U.S.C. § 2201(a), federal courts may declare the rights and legal relations of parties where an actual controversy exists.

76. An actual controversy exists here concerning the President's asserted authority to impose tariffs under IEEPA, the constitutionality of IEEPA, and CBP's authority to implement and collect the resulting duties.

77. Plaintiff has suffered injury by having been required to pay IEEPA duties as a result of the Trafficking Tariff Orders and Reciprocal Tariff Orders on merchandise Plaintiff has imported into the United States.

78. This Court may exercise its equitable authority to issue a declaratory judgment that the challenged Trafficking Tariff Orders and Reciprocal Tariff Orders are unlawful for any of the reasons set forth above, and that CBP lacks authority to implement or collect the resulting duties as to Plaintiff.

## **REQUEST FOR RELIEF**

Plaintiff respectfully requests that this Court:

a) Declare that the President lacks the authority under IEEPA to set tariff rates or impose new tariffs;

b) Declare that the challenged Trafficking Tariff Orders and Reciprocal Tariff Orders are unlawful;

c) Declare that, with respect to Plaintiff, CBP lacks the authority to implement and collect any tariffs set out in the HTSUS that are based on the challenged tariff orders;

d) Enjoin CBP from imposing and enforcing any tariffs on Plaintiff's entries as set out in the HTSUS that are based on the challenged tariff orders;

e) Order CBP to reliquidate any of Plaintiff's liquidated entries for which Plaintiff paid IEEPA duties;

f) Order the United States to refund to Plaintiff the IEEPA duties collected on those entries, with interest, as provided by law; and

g) Grant such further relief as this Court deems proper.

Respectfully submitted,

/s/ Aaron Hutman
Aaron Hutman
Sahar J. Hafeez
Gina M. Colarusso

**Pillsbury Winthrop Shaw Pittman LLP**
1200 Seventeenth Street, N.W.
Washington, D.C. 20036
202-336-8140

*Counsel for Plaintiff*

Dated: January 12, 2026